## THE STATE v. W. E. STEWART, Appellant.

### Division Two, June 3, 1918.

1. **INFORMATION: Oath.** The verification of an information by the prosecuting attorney, that, "upon his oath, the facts stated in the information are true according to his best information and belief," complies with the statute (Sec. 5057, R. S. 1909) and is sufficient.

2. **JURY: Summoning and Impaneling: Disqualifying Sheriff: Upon Oath of Prosecuting Attorney Alone.** The act of the trial court, upon the application of the prosecuting attorney alone, alleging prejudice on the part of the sheriff in favor of defendant in designating the coroner to select the *venire* and perform the duties of sheriff, and, upon formal objection by the defendant to the coroner, alleging prejudice against him, the appointing by the court of an *elisor* to summon the *venire* and perform the duties of sheriff, will not be interfered with upon appeal, unless it appears that it was arbitrary and unjust. Whether the trial court acts upon the unsupported affidavit of the prosecuting attorney, or requires proof of the prejudice of the sheriff, is left to his discretion.

3. ————: **Retaining Veniremen Selected by Sheriff Before Disqualification.** The method prescribed by statute for summoning and impaneling jurors is directory; and if the *elisor*, after the disqualification of the sheriff and coroner, retained certain members of the trial panel summoned by the sheriff before he was disqualified, that fact is not error in the absence of a showing that such members were otherwise disqualified.

4. **EVIDENCE: Telephone Call for Deceased.** Under the circumstances of this case, it was not error to permit a witness for the State, who resided at the house where the deceased roomed, to testify that there was a telephone call for him a short time

State v. Stewart.

before he was killed in defendant's office and that it was a man's voice at the phone, in response to which witness called deceased, who answered the phone and soon thereafter left the house. Even if by remote inference the testimony could be held to be prejudicial, its harmful effect was neutralized by the court, upon the prosecuting attorney's failure to connect defendant with the call, in directing the jury to disregard the testimony.

5. ———: **Facial Expression of Defendant.** Witnesses may testify to their impressions or opinions as to matters open to the senses, but otherwise incapable of exact description. Hence, it was not error to permit a witness to testify that defendant's look a few minutes after the homicide was that of "desperation and determination."

6. ———: **HOMICIDE: Relations of Deceased With Wife of Defendant.** It is not error to refuse to permit defendant to prove circumstances which would tend to show that deceased and defendant's wife had sustained improper relations, where there is no evidence that the circumstances had been communicated to the defendant.

7. ———: ———: **Provocation.** A defendant on trial for murder is not entitled to prove by other witnesses facts concerning his wife's relation with deceased of which he had no knowledge, and which therefore could not have influenced his homicidal action. Nor should he be permitted to prove by other witnesses that what she had said to him concerning such relations were true. Such testimony does not tend to show provocation for his crime.

8. ———: **Cross-Examination of Defendant.** The cross-examination of defendant concerning matters which, from their evident nature, could not have proved prejudicial to him upon any theory, is not reversible error.

9. **INSTRUCTION: Credibility of Defendant.** An instruction concerning the credibility of witnesses, in the usual phraseology, which does not single out defendant from other witnesses, does not conflict with the ruling in Finkelstein's case.

10. ———: **Accidental Homicide: Self-Defense.** Where the defense relied upon was accidental homicide, and there was no evidence of self-defense, it is not error to refuse an instruction on self-defense.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*Scott J. Miller* for appellant.

(1) The sheriff subpoenaed six jurymen, and there-
after, the *elisor* without any authority, returns forty
men, out of which return six men were chosen who,
added to the six already summoned by the regular
sheriff, made up the twelve men before whom the de-
fendant was tried. He should have been fairly tried.
He did not have twelve jurymen served and summoned
by the sheriff but had a jury composed of twelve
men, six of whom were legally served by the sheriff
and six of whom were served by the elisor. (2) The
affidavit of the prosecuting attorney, alone, is not
sufficient to disqualify the legally authorized sheriff,
elected by the people, to impanel a jury. It was an
assumable fact and the defendant had the right to
have the matter decided upon the testimony before
the court. In this case there could have been no
possible reason for filing this affidavit, because the
sheriff offered to testify, as shown by the record, that
he was not of relation, had never seen the defendant
until the night of the homicide, was not prejudiced for
or against him. The rights of the defendant were not
properly guarded when an outsider could be called in,
of whose fitness for the important position the defend-
ant had no knowledge. (3) The foreman of the jury
that returned the verdict was one of the jurors selected
by the sheriff. If he had any prejudice, it was in
favor of the State instead of in favor of the defendant,
as shown by his return of the verdict against the mass
of testimony adduced in this case following the killing
of the deceased. The charge that the sheriff was biased
in this case is facetious, and by the judgment of the
court it was shown to not exist. (4) The information
was not properly sworn to, as the evidence shows that
the prosecuting attorney knew none of the facts, but
swears to it as a fact as known and seen by him
and takes the place of any other witness who was
present and saw the affray. When the prosecuting
attorney swears to the information, as any other wit-

ness, he must have knowledge of the fact. It is not sworn to as an officer but as a witness, and the evidence shows that he had no such knowledge and, therefore, the information is illegal. (5) The testimony of Helen Brice, of itself, would be harmless, but it poisoned the mind of the jury because the State attempted to show that the deceased was called by the defendant, and because somebody called the deceased it must have been the defendant. Could anything be more prejudicial, and especially when there isn't a bit of testimony anywhere that the defendant ever communicated with the deceased? This testimony was vicious and after it was once admitted could not, by instructions or otherwise, be taken away from the jury. (6) The witness was permitted to say that the defendant had a look of "desperation and determination," and the sanction of the court was placed upon this vicious testimony. (7) By the testimony of Charley Golden the defense attempted to show that he held a conversation with the deceased in reference to the wife of the defendant. (8) Mrs. Black was asked "if on Saturday evening before this trouble she saw the deceased and Mrs. Stewart go to this house," and the court sustained the objection, giving his reasons. The deceased was the despoiler of defendant's home and this testimony tended to show it, and the jury should have had the benefit of it. The same I might say of the testimony of Mrs. Green, who was another neighbor to the once happy home of this defendant. The cross-examination of defendant concerning matters as not brought out by the examination in chief, was improper. There is not one word said in the direct examination about any of this cross-examination. State v. Borris, 199 S. W. 1; Sec. 5242, R. S. 1909. (9) Instruction 17 is bad in asserting "the interest of the witness, if any, in the result of the trial, the motive, if any, actuating the witness to testify." The jury told in this case that the defendant had a motive and that the testimony however honestly and faith-

fully given might, on account of this motive and the fact of his being the defendant, would be the motive to testify falsely to retain his liberty.

*Frank W. McAllister,* Attorney-General, *Thomas J. Cole,* of counsel for respondent.

(1) The objection that the jury has not been legally summoned and impaneled in a criminal case comes too late if made for the first time in the motion for new trial. State v. Sansone, 116 Mo. 11; State v. Grant, 152 Mo. 71; State v. Smith, 114 Mo. 423. (2) The bill of exceptions in this case does not show that a motion to quash the panel was ever filed in this case, and, while it is true that a motion to quash the panel is set out in the record proper, that fact will not avail the appellant here. State v. Price, 186 Mo. 143. The fact that appellant has copied his motion to quash the panel in his motion for new trial will not serve the purpose desired. The motion for new trial cannot be made to serve the purpose of the bill of exceptions. State v. Pollard, 139 Mo. 228; State v. Ashcraft, 170 Mo. 409. (3) The information in this case is sufficient. State v. Clay, 201 Mo. 681; State v. Long, 201 Mo. 667; State v. Privitt, 175 Mo. 223; State v. Brown, 168 Mo. 453-5; State v. Kindred, 148 Mo. 279. (4) Instruction 9 correctly declares the law to be that if deceased was accidently wounded by the first shot and that thereafter defendant fired the shot which killed deceased that defendant could not be acquitted on the ground of accidental homicide. (5) Instruction 14 clearly stated that whatever were the relations between defendant's wife and deceased that the fact of such relations did not of itself constitute a defense to the charge. State v. Jones, 78 Mo. 282. (6) Instruction 16 correctly states that the question whether or not deceased had improper relations with defendant's wife was not an issue on the trial. (7) Instruction 17 was the usual instruction as to the credibility of the witnesses. State v. Hudspeth, 159 Mo.

200. (8) That the evidence is sufficient to sustain the verdict. State v. Underwood, 263 Mo. 685; State v. Corcelia, 250 Mo. 425.

WALKER, P. J.—The appellant was charged by information in the circuit court of Livingston County with murder in the first degree, in having, on July 6, 1916, shot and killed one Karl Schlobohm. A trial resulted in a conviction of murder in the second degree, the punishment being · fixed at ten years in the Penitentiary. From this judgment·appellant seeks a review in this court.

The deceased was killed in the appellant's office, in the city of Chillicothe, by shots from a revolver fired by appellant. The latter was an insurance agent. He spent the greater part of July 6, 1916, the day of the homicide, at another town in Livingston County, transacting business for his company. Late in the afternoon of that day he returned to Chillicothe and made inquiry at different places for deceased. He said that he wanted to talk to him, and protest against the attentions of deceased to his wife. After these inquiries, from which he·learned where the deceased roomed, he went to a second-hand store, bought a revolver, and at another place obtained some cartridges with which he loaded it, and took it to his office and laid it on a desk near where he usually worked. He then went to a restaurant and got his supper, after which he returned to his office.

It appears that the deceased heard that the appellant had been inquiring for him, and on the same day at some time between 7:20 and 7:30 o'clock P. M., he went to the office of the appellant, and upon entering, asked the latter what he wanted with him. Appellant asked the deceased to be seated, and he would inform him. Deceased sat down, and appellant told him that his (appellant's) wife had told him the night before of the conduct of deceased towards her, and asked·him if he would not leave the town and molest her no more. Deceased told him that he would do as he pleased with appellant's wife, so long as she did not object to his

conduct; that it was none of appellant's business. Appellant then stated in detail what his wife told him. Deceased admitted the charges to be true, saying she was just as much to him as she was to the appellant. At this jucture, according to appellant's statement, both attempted to secure possession of the pistol, which, during this time, had been lying on the desk between them. A scuffle ensued, in which the deceased was shot twice and killed. One shot penetrated his heart, causing death almost instantly. There is some testimony that during the scuffle, and after the deceased had been shot the first time, he ran to a window and called for help.

The foregoing is, in the main, a resume of the appellant's testimony. Other incidental facts and physical circumstances are present, indicative of the improbability of portions of this testimony, which the jurors in their finding evidently did not believe. These facts need not, therefore, be detailed, as their presence will not, in the view we take of this case, materially affect the conclusion reached. If it becomes necessary to refer to this testimony we will do so in the discussion of the errors assigned.

I. The verification of the information by the prosecuting attorney is alleged to be insufficient. In substance, it states that the prosecuting attorney, upon his oath, says that the facts stated in the information are true according to his best information and belief. This is in compliance with the statute (Sec. 5057, R. S. 1909) and is not subject to valid objection. If an information is attested by a private person, it is necessary for the oath attached to be made upon actual knowledge, such as would authorize the affiant to testify as a witness. Made by the prosecuting attorney, however, it may be based upon such information as he may feel warranted in believing and relying upon. [State v. Temple, 194 Mo. l. c. 241; State v. Gregory, 178 Mo. l. c. 55.] This contention is, therefore, without merit.

*Information.*

II. The manner in which the jury was impaneled is assigned as error. On the sworn application of the prosecuting attorney, alleging prejudice on the part of the sheriff in favor of the appellant, the court designated the coroner, under the authority of Section 11218, Revised Statutes 1909, to select the *venire* and perform all the other duties of the sheriff. The appellant, thereupon, formally interposed objections to the court's designation, alleging that the coroner was prejudiced against him. The court, under Section 3864, Revised Statutes 1909, then appointed an *elisor* to summon the *venire* and perform the duties of the sheriff in the cause. The appointee appeared, qualified by filing the statutory oath and proceeded to the discharge of his duties. The specific ground of appellant's contention is, that the court should not have set aside the sheriff upon the sworn affidavit alone of the prosecuting attorney, as to his prejudice.

Summoning and Impaneling Jury.

This contention has heretofore received the deliberate consideration of this court in a number of cases; the conclusion reached being that we will not interfere with the trial court's action in a matter such as is here under review, unless it appears that it was arbitrary and unjust. This, for the very sufficient reason that in the absence of prejudice there is no ground of complaint. Therefore, whether the trial court acts upon the unsupported affidavit of a prosecuting attorney, or requires proof of the prejudice of the sheriff, is a matter left to its discretion. [State v. Jeffries, 210 Mo. 1. c. 323; State v. Hunter, 181 Mo. 1. c. 333; State v. Lanahan, 144 Mo. 1. c. 38; State v. Hultz, 106 Mo. 1. c. 49.] There is no intimation that the individual jurors, either those constituting the array, or the trial panel, were subject to objection. Under such circumstances, nothing appearing that the court was not prompted by a wise discretion, its action will not be disturbed.

Supplemental to the foregoing contention, it is stated in the motion for a new trial that certain members of the trial panel were summoned by the sheriff

before he was disqualified, and that the others were summoned by the *elisor*. If this be true, although the motion for a new trial does not prove itself, its effectiveness being dependent upon something more than its own terms, this contention will not avail in the absence of a showing that the members of the jury were otherwise disqualified. This, for the reason that the method prescribed by the statute for the summoning and impaneling of jurors is directory. [State v. Jackson, 167 Mo. l. c. 295; State v. Matthews, 88 Mo. l. c. 123.]

It is questionable in the condition of the record, whether appellant's contentions, as above set forth, have been preserved in a manner to authorize their review; notwithstanding this fact, we have considered and disposed of them on their merits.

III. It is contended that error was committed in permitting a witness, Helen Brice, who resided at the place where the deceased roomed, to state that there **Testimony.** was a telephone call for the latter a short time before he left, the evening of the homicide; and that it was a man's voice at the phone, in response to which she called the deceased, who answered the phone, and soon thereafter left the house. This testimony was admitted upon the statement of the prosecuting attorney that the appellant would be connected with the call. Failing in this, the court ordered the testimony stricken from the record, and directed the jury to disregard it. Only by remote inference can this testimony be held to be prejudicial. Failing to connect the appellant therewith left to the jury no reasonable ground to conclude that it was he who made the call. If, however, it be reasoned that the jury might therefrom have concluded that it was the appellant, the testimony viewed in its most unfavorable light cannot be regarded as injurious, for the reason that it constituted nothing more than a presumption based upon an inference; this, in the presence of express testimony that the appellant had, during the afternoon

274 Mo.—42

preceding the homicide, made personal inquiry of a number of persons as to the whereabouts of the deceased, will not constitute such an error as to work a reversal. Aside from this theory, however, the court's affirmative declaration, excluding this testimony from the consideration of the jury, neutralized any harmful effect it might otherwise have had.

The testimony as to a direction stated by a witness to have been given by some one from the window of the appellant's office, when the deceased was in the street below inquiring as to its location, coupled with the appellant's testimony that he was the only one in his office at that time, is sufficient to render the testimony admissible as one of the relevant circumstances immediately preceding the homicide.

The court's refusal to strike out the statement of a witness that the appellant's look a few minutes after the homicide was "that of desperation and determination," is urged as error. The objection raises no question as to the witness not being an expert or one not competent to define the state of the mind from the expression of the countenance, but simply that his testimony was not a statement of a fact, but a mere expression of opinion. The general rule in regard to testimony of this nature is that witnesses are permitted to testify to their impressions or opinions on such matters, because there is no other manner in which the evidence can be gotten before the jury. Our reports afford numerous illustrations of the admissibility of this character of testimony, which is open to the senses but otherwise incapable of exact description. For example, in State v. Ramsey, 82 Mo. l. c. 137, a witness was allowed to state that a certain man "looked like he was scared." In State v. Parker, 96 Mo. l. c. 393, witness was permitted to state that certain weeds looked like they had been pressed down by one's knees. In State v. Buchler, 103 Mo. l. c. 207, testimony of this character is held admissible to determine the intent and purpose of the accused; that while a witness must testify as to facts, there are manifestations, expressions, and conditions, which the lan-

guage of ordinary persons cannot reproduce. In Partello v. Railroad, 217 Mo. 645, a witness was permitted to give his opinion of the health of an injured plaintiff whom he had had opportunity to observe. In State v. David, 131, Mo. l. c. 395, it was held competent on a trial for murder for a witness to state how deceased acted at the time he was said to have been poisoned. Under these authorities, the admission of the testimony in question was not error.

The court did not err in refusing to permit witnesses to answer certain questions asked by appellant's counsel. These were in regard to the age of appellant's oldest child; as to whether or not appellant kissed his wife the morning of the homicide; as to the state of the appellant's health; as to why he ceased to be a minister; and whether or not he was a good citizen. The utter irrelevancy of these inquiries is apparent.

As to the offer to prove by the testimony of one Charley Golden, and Mrs. Dr. Black, circumstances which would have tended to show that deceased and appellant's wife had sustained improper relations, it is sufficient to say that there was no evidence that these circumstances had been communicated to the defendant. The admission of this testimony, therefore, would only have tended to mislead the jury as to the trial issue in the case. [People v. Webster, 139 N. Y. 73.] We discuss this contention elsewhere in passing on appellant's objections to certain instructions.

Other objections to the admission and exclusion of testimony have been considered, and are overruled, either because they have not been properly preserved in the record or that the court's ruling did not constitute prejudicial error. This is especially true in reference to the cross-examination of the defendant, to which the appellant objects. In State v. Sherman, 264 Mo. l. c. 381, we discussed with some degree of care the application of the statute (Sec. 5242, R. S. 1909) limiting the cross-examination of a defendant, holding that the same should be limited to matters which, by reasonable construction, could not be regard-

ed as material to the cause; or could not, from their evident nature, have proved prejudicial to the defendant upon any theory. The cross-examination here complained of was of the latter character. While a fair interpretation of the record is that it was excluded by the trial court, and hence could have been disposed of on this ground, we, nevertheless, have analyzed same and find that, if it had been preserved, it was not harmful.

IV. Instruction numbered 9, given by the court, based on the evidence of accidental homicide, correctly declared the law under the facts.

Instructions.

The distinction between direct and circumstancial evidence is correctly defined in instruction numbered 11, given by the court. [State v. Bauerle, 145 Mo. 1.]

Instruction numbered 14, in regard to the relations, if any, which may have existed between appelant's wife and deceased, as constituting no defense to the charge here made, correctly states the law. [State v. Jones, 78 Mo. 1. c. 282.]

Instruction numbered 16, further declaratory of the doctrine announced in instruction numbered 14, does not take from the jury any proper testimony on behalf of the appellant and is not subject to objection.

In discussing the propriety of instructions numbered 14 and 16, a more extended review of the rule regulating the character of evidence upon which these instructions are based is necessary than has heretofore been given in the consideration of the testimony.

Appellant, while not denied the right to state to the jury what his wife had informed him, as to the conduct of the deceased towards her, was not permitted to prove by the testimony of certain witnesses, facts relative to the conduct of deceased, of which he had no knowledge, and which could not, therefore, have influenced his action. Neither was he allowed to introduce the testimony tending to show that what his wife told him was true. The trial court did not err in this regard. The admission of the testimony of the ap-

pellant gave the latter whatever benefit his own testimony afforded as tending to show provocation for his crime; but this did not authorize the admission of the testimony of witnesses as to other facts of which the appellant had no knowledge. This general rule is announced in 21 Cyc. 951 on this question: "A defendant on trial for the murder of his wife may show that he was informed, and believed, that she had been unfaithful, as bearing on the question of provocation. . . . Reports and rumors, however, of the infidelity of a wife cannot be shown in the absence of proof that defendant had knowledge thereof." While this character of testimony is more particularly admissible as a ground of provocation where a defendant is charged with the murder of his wife, believing her to have been unfaithful, the testimony having been admitted on behalf of the appellant in this case, he has no ground of complaint on occount of the broad construction given by the trial court to this rule. Certainly, under no circumstances, could he have been influenced by any facts of which he was ignorant. The cases of State v. Downs, 91 Mo. 19; State v. Grugin, 147 Mo. 39; Smithson v. State, 137 S. W. (Tenn.) 487, cited by appellant in support of his contention that the court erred in excluding evidence of uncommunicated facts to the defendant, differ materially in their facts from those in the case at bar, and hence do not sustain the appellant's contention. The distinction between the admissibility or non-admissibility of testimony of this character, as tending to show provocation, will be found fully discussed in People v. Hurtado, 63 Cal. 288; People v. Webster, 139 N. Y. 1. c. 79; Combs v. State, 75 Ind. 215; State v. Murray, 83 Kans. 1. c. 153; State v. Albanes, 83 Atl. (Me.) 1. c. 550. These authorities fully sustain the conclusion we have reached in regard to the particular matter here under discussion.

In Shepherd v. Comm., 119 Ky. 931, the facts are entirely different from those in the instant case. There the defendant was not permitted to state what his

wife had told him; here, as we have stated, the appellant was not so limited.

The giving of instruction numbered 17 is urged as error. It is the formal instruction in regard to the credibility of witnesses, clothed in the usual phraseology, and is not subject to tenable objection. The basis of appellant's objection is evidently the ruling of this court in the Finkelstein case. That had reference solely to the testimony of the defendant, and it does not, even by remote implication, hold that instructions of the character of the one here under review are error.

Refusal of the trial court to give appellant's instructions designated literally F, G, H, and O is complained of. F is based on the theory of self-defense, of which there was no testimony. The defense deduced from all of the evidence, and on which appellant relied, was that of accidental homicide.

Instruction G was simply a comment on the testimony, and hence properly refused.

Instruction H was misleading in not attempting in any manner to define the different degrees of homicide. The law had been properly declared in regard thereto, and this instruction, if correct was, as a consequence, unnecessary. The theory of the defense, based on accidental homicide, had been fully and correctly declared in instructions given, and hence Instruction O was properly refused.

Counsel for appellant has with painstaking care pressed upon our attention many errors alleged to have been committed in this case; in addition he has run the gamut of advocacy in an appeal for the protection of the inviolability of the home and the right of the husband to protect same.

As to the first, we have dispassionately reviewed them wherever properly preserved for our consideration; as to the second, mindful of our province as a court of errors alone, we have sought to avoid the influence of counsel's eloquent appeal, proper only before the triers of the facts, and to confine our-

VOL. 274;    APRIL TERM, 1918.     663

selves to the record. Thus charted, we have sighted no port warranting a reversal. The judgment will, therefore, be affirmed. All concur.