STATE OF MISSOURI, Respondent, v. CHARLES H. TIEDT, Appellant, No.
41631—229 S. W. (2d) 582.

Court en Banc, April 10, 1950.

Rehearing Denied, May 8, 1950.

*Homer C. King, Maurice Pope, Stanley I. Dale* and *John C. Landis III* for appellant.

596

*J. E. Taylor,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

DALTON, J.—Defendant has appealed from a conviction and sentence for murder in the first degree. Punishment was assessed at death. This is defendant's second appeal. On the first appeal this court reversed a conviction and sentence imposing a like punishment ▮▮▮▮ and remanded the cause for a new trial on account of inflammatory and prejudicial arguments of the assistant prosecuting attorney. State v. Tiedt, 357 Mo. 115, 206 S. W. (2d) 524.

The information charged defendant with the first degree murder of Fred Matchett in Buchanan County, Missouri, on November 25, 1945, by shooting him with a shotgun. The State's evidence showed that when defendant killed Fred Matchett, he also killed Fred Matchett's brother and sister-in-law. The sufficiency of the State's evidence to make out a submissible case of murder in the first degree is not questioned. In view of the assignments of error presented on this appeal, a detailed statement of the facts is not required. It is sufficient to say that the essential facts of the State's case were substantially as stated in the prior opinion of this court.

Defendant did not testify at the second trial, but offered in evidence a written and signed statement, which he gave to the police and prosecuting officer on the day of his arrest. The statement was identified and, without objection, the circumstances of its execution were fully shown by the State's evidence. The State did not offer the exhibit in evidence and, when offered by defendant, it was received in evidence without objection. This statement, mentioned in the prior opinion, was in question and answer form and purports to cover in some detail the relationship of defendant and the Delbert Matchett family and the detailed circumstances leading up to, as well as those attending, the death of the three Matchetts. Other facts necessary to a disposition of the errors assigned will be stated in the course of the opinion.

Error is assigned on the court's action in overruling defendant's challenge for cause as to juror Hugh H. Madden and error

is further assigned on the court's interrogation of this juror by leading questions. The juror was examined at length by counsel for the State and for defendant. He indicated that he had formed an opinion, based solely on "general newspaper reports"; that it was not a fixed opinion, but would influence his judgment and take evidence to remove it; and that it would be impossible for him to be fair and impartial in the case. He also made statements in conflict with this testimony and said he thought he could go into the trial with an open mind and not be "guided by anything but the evidence and the instructions." Thereafter, the court examined the juror at some length and the juror's answers to all questions by the court tended to show a fully qualified juror. The court did not err in asking leading questions or in overruling the challenge for cause. No objection was interposed at the time to the court's method of conducting the examination. The trial court saw and heard the juror testify during the prior examination by the respective attorneys. To finally determine the matter the court made his own examination. Considering the full record of the voir dire examination of this juror, which examination covers some five and one-half pages of the transcript, no error or abuse of the court's discretion appears. Sec. 4060 R. S. 1939; State v. Burns, 351 Mo. 163, 172 S. W. (2d) 259, 267; State v. Wampler (Mo. Sup.), 58 S. W. (2d) 266, 268.

▉ Appellant contends the court erred in admitting in evidence the testimony of State's witness Stropes (when recalled) "relative to the matter of time of calls." Appellant says that "it appeared from the witness's testimony that he was merely reading from a record made by someone else, which he did not know to be correct and which did not in any way refresh his memory so as to give him the right to testify of his own knowledge."

The questioned evidence appears in connection with an effort to properly identify an exhibit offered by the State. The exhibit was objected to by defendant and was subsequently withdrawn. The record fails to show any objection at any time to any of the evidence now complained of and no such error is referred to in the motion for a new trial. Appellant may not now complain. State v. Hepperman, 349 Mo. 681, 162 S. W. (2d) 878, 888; State v. Preston (Mo. Sup.), 184 S. W. (2d) 1015, 1017; Sec. 4125 R. S. 1939. The record does show that, after the questioned evidence ▉ was before the jury without objection, the defendant moved "to strike all of the testimony of this witness" on the ground that he had attempted to refresh his memory from a document not properly identified and not offered in evidence. The motion was overruled and this ruling is complained of in the motion for a new trial, but appellant does not now complain of error in ruling the motion to strike.

The witness first testified that he was in a squad car at the Union Station when he received a police broadcast "about 12:45 a.m.,"

November 25, 1945. He proceeded at once to the Matchett residence and arrived "within a half second" behind another car from the police station that stopped in front of defendant's residence. On cross-examination he subsequently fixed the time of receipt of the call as 12:29 a. m. and he was requested to produce a radio log book from the police station. On being recalled to the witness stand he refreshed his recollection from the radio log book, which he said was a government record required to be kept by the police department for the Federal Communications Commission, but which was written up by operator Morgan Jones. He said that he had been confused by a 12:29 a. m. call, which had nothing to do with this case, and that the call to the Matchett residence was received by him at 12:44 a. m. The exact time of the radio broadcast or his receipt of the call was immaterial to any issue in the case. No prejudicial error appears from the court's action in overruling the motion to strike, or otherwise in connection with this evidence.

Appellant contends that the court erred in excluding the testimony of "defendant's witness Gritz to the effect that, after having been threatened by his neighbor Matchett, the defendant appeared excited, upset and unnerved." Appellant says the evidence was material and of "the type of evidence that must be shown by a person's appearance, in that the little things observed cannot all be detailed, but rather, it must come out, as a general impression of the witness as to the appearance of the one he is observing." State v. Stewart, 274 Mo. 649, 204 S. W. 10, 13; State v. Ferguson, 278 Mo. 119, 212 S. W. 339, 343; State v. Wilkins (Mo. Sup.), 100 S. W. (2d) 889, 893.

Defendant offered to show by witness Gritz that "approximately five or six weeks before November 24 or 25, 1945, on a Sunday while this witness was in the company of the defendant, that he learned from the defendant of a discussion which the defendant had had with Matchett. That this witness observed the appearance and the demeanor of defendant Tiedt at that time, and it was the impression of this witness that defendant Tiedt was disturbed, worried, he was excited and was alarmed." Appellant insists that the excluded evidence showed defendant's fear of violence to himself, that it could be considered in fixing punishment and that "the background of previous conversations between defendant and his neighbor were important to show the state of mind of the defendant."

Before this offer was made Gritz had testified that, when he saw the defendant on the afternoon and evening of November 24, 1945, defendant seemed natural, didn't appear to have anything unusual on his mind and had said nothing about the Matchetts. Gritz also testified that he knew nothing of any trouble between defendant and the Matchetts except what defendant had told him. The tendered evidence was properly refused. There was no evidence in the record

tending to show defendant had ever had any prior difficulty with the Matchetts; or that defendant's alleged condition was in any manner due to defendant's relationship with them. The offer would have shown the relationship only by hearsay. Any such statements by defendant were purely self-serving and inadmissible. State v. Wright, 352 Mo. 66, 175 S. W. (2d) 866, 871; State v. Perkins (Mo. Sup.), 92 S. W. (2d) 634, 638. Nor was the evidence admissible on any theory or res gestae. State v. Stallings, 334 Mo. 1, 64 S. W. (2d) 643, 645.

▮ Appellant contends that the court erred in refusing defendant's Instruction F. Appellant says that the instruction "properly declared the law relative to the right to receive the benefit of the doubt as to ▮ the severity of punishment"; that, if defendant was guilty of murder in the first degree, "he was entitled to the benefit of a reasonable doubt * * * as to whether he should be given the death penalty or given a life sentence"; and that the "same benefit of reasonable doubt should apply in fixing punishment as well as in determining whether any punishment should be assessed." State v. Anderson, 86 Mo. 309 and 2 Raymond, Missouri Instructions, 663, Sec. 6241 are cited, and see State v. May, 172 Mo. 630, 649, 72 S. W. 918. The authorities do not aid appellant.

The instruction was properly refused. If, under the evidence and instructions of the court, the jury found defendant guilty of murder in the first degree, it was for the jury to fix the punishment. The matter of punishment, within the limits fixed by the statute, was solely within the discretion of the jury under all of the facts and circumstances in evidence. Sec. 4378 R. S. 1939; Sec. 4092 R. S. 1939; State v. Bevins, 328 Mo. 1046, 43 S. W. (2d) 432, 434; State v. Creighton, 330 Mo. 1176, 52 S. W. (2d) 556, 563; Ex parte Dusenberry, 97 Mo. 504, 11 S. W. 217. No question of reasonable doubt was involved in the matter of assessing the punishment. People v. Krauser, 315 Ill. 485, 146 N. E. 593, 605.

▮ Appellant contends that the court "erred in overruling objections and in failing to reprimand counsel and in failing to declare a mistrial and discharge the jury on account of "certain improper and prejudicial argument which appellant contends "constituted a direct reference to and a comment on the fact that the defendant had failed to take the witness stand on his own behalf." A brief statement of the circumstances attending the mentioned argument is required. In this connection, we must sustain appellant's motion to have the full and complete arguments to the jury of all counsel in the case included in the bill of exceptions and record. We believe that such is necessary to properly rule this assignment.

▮ In his opening statement to the jury, defendant's counsel called the jury's attention to the fact that defendant had testified in

his own behalf in the first trial. Counsel stated:' "The defense evidence will not be merely a re-hash of the previous evidence. I do not mean by that Mr. Tiedt is going to change his story, or that he is going to tell any different stories from the one he told the officers and the Prosecuting Attorney at the police station, *and told the Court on the witness stand before.* * * * It is' admitted in this case that Mr. Tiedt did actually kill Fred Matchett, Delbert Matchett and Mrs. Delbert Matchett. There is no dispute about that point. There is no dispute he killed with a shotgun; that they were killed intentionally and not accidentally, and that at the time they were killed, they actually had no weapon upon them. * * * Those facts are admitted and the case begins at that point. * * * Therefore, the Jury need not worry whether Tiedt killed the Matchetts—we admit that, but our lawsuit is why and under what circumstances. * * . * It is true that after Tiedt had fired 3 shots, he reloaded his gun and came back out and stood in plain sight. After a while he took the gun in the house and came back out and stood in front of his house in plain sight until the officers came up and arrested him." (Italics ours).

Stanley Dale, counsel for the defendant, in his argument to the jury said: "We would like to mention the fact that Captain Andrews identified the Exhibit, which was a statement of Charles Tiedt given at the police station in which he told how it happened; what caused it to happen and in which he covered the entire matter of this occurrence; and yet—Gentlemen of the Jury, it was left to the defense to introduce this statement into testimony. We do not ask why they did not. We leave that up to you. * * * This was not good enough for the prosecuting attorney to introduce in evidence, but we introduced it into evidence because we believe this is the true story of this case; that this is exactly how this killing happened and how it occurred. * * * It is the defense's own theory of how it happened. * * * Gentlemen, that was the defendant's version of this case * * * he further stated in this statement that it was the truth and we feel it should be considered as a correct version of ▆▆▆ this occurrence." Defendant was referred to as "this man sitting here today" and questions and answers in his statement were pointed out to the jury.

In reply Mr. Duvall, Assistant· Prosecuting Attorney, argued: "Mr. Dale complained of the fact we didn't introduce Tiedt's statement in evidence. Isn't that a crime men? Of course his statement was taken. We didn't have any idea but what they would put him on the stand and we could have cross examined him."

Defendant's counsel thereupon objected on the ground that the comment was "directed toward the failure of defendant to testify in his own behalf." A mistrial was asked for and that the jury be discharged. No other relief was asked. The request was denied.

Thereafter, the Court said to the jury: "The instructions which were read to you contain the law in this case. * * * Arguments of attorneys in a case are not evidence * * * The Court, Mr. Duvall, asks you to keep within the record and with the law. As to the rights of this defendant, the counsel for the defense should recognize that an attorney for the State has certain rights in answering arguments concerning your case * * * the jury will disregard the last few remarks of the counsel for the State * * *." The motion for a mistrial and to discharge the jury was renewed and denied, but no other relief was asked.

Section 19, Art. 1 of the Constitution of Missouri provides that "no person shall be compelled to testify against himself in a criminal cause." Section 4082 R. S. 1939, provides that the failure of an accused person to testify on his own behalf shall not "be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place."

Appellant has cited these provisions and also the following cases: State v. Robinson (Mo. Sup.), 184 S. W. (2d) 1017 (where timely and proper objection was made and overruled to "a pointed reference to the fact that the defendant had not testified" and where there was no waiver or cure); State v. Conway, 348 Mo. 580, 154 S. W. (2d) 128, 132 (where the court permitted cross examination of defendant to show defendant had not testified in her preliminary trial and, further, permitted an argument to be made thereon); State v. Shuls, 329 Mo. 245, 44 S. W. (2d) 94, 96 (where a pointed and intentional reference was made to defendant's failure to testify and where it was accentuated by the court's instruction and where the inevitable effect of the argument was to suggest that an unfavorable inference should be drawn); State v. Watson (Mo. Sup.), 1 S. W. (2d) 837, 840 (where after the court sustained an objection to a direct reference, the prosecuting attorney continued to allude to the failure of defendant and his wife to testify): State v. Dodo (Mo. App.), 253 S. W. 75, 76 (where there was no apology and no withdrawal and where a direct statement by the court, that defendant was not compelled to take the stand, accentuated the error); State v. Drummins, 274 Mo. 632, 643, 204 S. W. 271, where there was a direct reference to defendant's failure to say anything and no reprimand and no direction to disregard); State v. Snyder, 182 Mo. 462, 523, 82 S. W. 12 (where the prosecuting attorney persistently called attention to defendant's failure to testify and the remarks of the court "accentuated the allusion" by direct reference to such failure to testify); State v. Moxley, 102 Mo. 374, 392, 15 S. W. 556 (where the language used "was simply an adroit and insinuating attempt, indirectly to accomplish what could not have been accomplished by direct statement" and where the purpose of the attempt was manifest). These

authorities are not necessarily controlling under the facts in this case.

While Sec. 4082, supra, is mandatory, the established rule in this state is that a defendant's privilege under both the constitutional provision and the statute is personal and can be waived by him. State v. Mosier (Mo. Sup.), 102 S. W. (2d) 620, 627. When the protection afforded by Sec. 4082, supra, has been infringed, the error in some instances may be cured by a timely and adequate rebuke or by an instruction from the Court. State v. Conway, supra; State v. Shuls, supra; State v. Fitzgerald, 130 Mo. 407, 436, 32 S. W. 1113; State v. Taylor, 134 Mo. 109, 157, 35 S. W. 92. In State v. Watson, supra, ▮▮▮ it was pointed out that "A record may present a state of facts and circumstances permitting the court to say that an allusion to the failure of defendant or his or her spouse to testify *was not prejudicial error* * * *." (Italics ours) (1 S. W. (2d) 837, 840). It is well settled that "an attorney for defendant cannot provoke a reply to his own improper argument and then complain of error." State v. Tiedt, supra, 206 S. W. (2d) 524, 527. Where the argument complained of on appeal is retaliatory in nature and invited by the remarks and suggestions of appellant's counsel an assignment of error thereon will not be sustained. State v. Pinkston, 336 Mo. 614, 79 S. W. (2d) 1046; State v. Kaner, 338 Mo. 972, 93 S. W. (2d) 671, 674; State v. Smith (Mo. Sup.), 300 S. W. 1081, 1083; State v. Harmon, 317 Mo. 354, 296 S. W. 397, 400. It is further true that "the State's counsel can go further by way of retaliation, in answering arguments of defendant's counsel, than he would be authorized to do in the first instance." State v. Beasley, 353 Mo. 392, 182 S. W. (2d) 541, 544. Whether or not a particular improper argument is so prejudicial under the facts in the particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court. An appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant. State v. Lynn (Mo. Sup.), 23 S. W. (2d) 139, 141; State v. Shilkett, 356 Mo. 1081, 204 S. W. (2d) 920.

In this case appellant's counsel offered in evidence and read to the jury appellant's statement giving in detail his version of the killing. We have set out some of counsel's argument with reference to that statement. In making the argument set out, in reviewing the facts set forth in the statement, in referring to "this man sitting here today" and to the statement as "defendant's version of this case," counsel necessarily and impliedly, we believe, called attention to the fact that appellant had not testified in this case. Subsequently, counsel referred to the statement as defendant's "testimony at the police station" and said "we wanted you to have all the information at our disposal." Each attorney for defendant argued the statement as true and one argued, "you might say that anybody who would

shoot three people would lie under oath,'' but he insisted the statement was true. Under the circumstances of this case, the argument that the statement was ''the true story of this case'' and ''the defense's own theory of how it happened,'' when counsel had already told the jury that defendant had testified in the first trial, was to impliedly and by inference and indirection make it clearly apparent to the jury that defendant had not testified in this trial. Further, counsel for· defendant challenged counsel for the State: ''Gentlemen of the Jury, it was left to the defense to introduce this statement into evidence. We do not ask why they did not. We leave that up to you.'' Such an argument called for an answer, asked for an answer and an answer was to be expected. Counsel for the State was entitled to reply.· In due time the answer came: ''We didn't have any idea but what they would put him on the stand and we could have cross examined him.'' The jury had already been informed that defendant had testified at . the first trial. Later, they learned from defendant's counsel that the judgment on the first trial was reversed on account of improper argument.

The court denied the request to discharge the jury or grant a mistrial. The court further excused the jury, asked counsel, ''what in the world were you thinking,'' then recalled the jury and directed the jury to disregard ''the last remarks of counsel for the State.'' The motion for mistrial was renewed and overruled, but there was no request for reprimand or other relief. Thereafter, counsel for defendant continued to argue defendant's story as the truth or ''pretty close to being true,'' and the State's failure to offer the statement. Counsel insisted ''there wasn't anything in there about cool, calm, deliberate, with malice aforethought.''

The trial judge heard all the arguments and statements as made before the jury. He saw and observed the manner in which the argument was made and answered. He overruled the motion for a new trial on this point, saying: ''The Court at the time felt, and feels now, that attorneys for the defendant in their zeal to faithfully perform their duty * * * threw down the bars and manifested the fact defendant did not personally take the witness stand. This was done by inference and * * * if there was any error, same was invited by the attorneys for the defense.'' .

Under all the facts and circumstances shown by this record, we think there was a waiver of appellant's right of non-reference under the statute; that the reply, as made, was invited; that there was no abuse of the court's discretion in ruling the matters presented; that there was no prejudice to appellant; and that appellant, on this record, is in no position to claim the protection of the statute, nor to complain of the court's failure to declare a mistrial. The assignment is overruled.

██ Finally, error is assigned on alleged improper, inflammatory and prejudicial argument of Assistant Prosecuting Attorney Louis V. Stigall and on the court's failure to sustain objections, reprimand counsel or grant a mistrial. It is contended that substantially the same argument was condemned in State v. Tiedt, supra. The specific part of the argument complained of is not set out in the motion for the new trial, nor definitely and specifically referred to therein. The motion does state: "*All of it* was prejudicial and inflammatory. It was a stubborn, arrogant, perverse and coldly calculated attempt to bias, prejudice and inflame the jury." (Italics ours).

Most of Mr. Stigall's argument was made without objection. Some parts were objectionable and some were not. Only an occasional objection was interposed. Some objections were sustained and no further relief asked and some were overruled. In such situation the assignment of error in the motion for a new trial was wholly insufficient and too general to preserve anything for review. This court is not required to search the record and determine what particular part of the argument was intended to be complained of. Sec. 4125 R. S. 1939; State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, 248; State v. James, 318 Mo. 525, 1 S. W. (2d) 137, 139; State v. Vesper, 316 Mo. 115, 289 S. W. 862, 864. The assignment is overruled.

Finding no reversible error in the record presented, the judgment is affirmed. *Conkling, Clark, JJ.,* and *Hyde, C. J.,* concur; *Ellison, J.,* dissents in separate opinion filed; *Leedy* and *Tipton, JJ.,* dissent and concur in dissenting opinion of *Ellison, J.*

ELLISON, J. (dissenting).—██ I respectfully dissent from the holding of the principal opinion that there was no reversible error in the argument of Assistant Prosecutor Duvall, wherein he referred directly to the failure of appellant Tiedt to testify at his trial, and stated if Tiedt had testified the State could have cross-examined him. The State contends the argument was provoked by the argument of appellant's counsel and was proper retaliation. And the trial court so held. This dissenting opinion is directed solely to that one point.

From the beginning of our Federal and State governments their constitutions have provided the accused in a criminal prosecution, shall not be compelled to testify against himself.[1] And the statutes and decisions in many jurisdictions have recognized that if the accused does take the witness stand in his own behalf he will be subject to cross-examination "against himself." For this reason they excuse him from testifying at all, at his option.[2]

---

[1] Fifth Amendment, Const. U.S.; Sec. 19, Art. 1, Const. Mo. 1945; Sec. 23, Art. II, Const. 1875; Sec. 9, Art. XIII, Const. 1821.
[2] 58 Am. Jur., p. 43, § 36; 70 C. J., p. 733, § 888.

In this State ever since 1877 we have had two statutes, Sec's 4081 and 4082, R. S. 1939, Mo. R. S. A., which have read since 1879 exactly as they do now. The first of these permits the accused (or spouse) to testify in a criminal prosecution but does not require him or her to do so, and makes ▮▮▮ such person subject to cross-examination on matters referred to in examination in chief. The second statute, Sec. 4082, which is involved here, provides that if the accused elects not to testify it shall not be construed to affect his guilt or innocence or to raise any presumption of guilt, nor shall it be referred to by any attorney in the case or be considered by the court or jury. This statute applies no matter how culpable the conduct of the accused may appear to have been. But it will be waived, of course, if the accused or his counsel refers to his failure to testify. In that event the prosecution also can refer to the same fact.

The principal opinion holds on three grounds that the provisions of this latter statute were waived by the appellant's counsel. The first one stated is that appellant's counsel Landis in his opening statement to the jury referred to the fact that there had been a previous trial of the case [which was reversed and the cause remanded in 357 Mo. 115, 206 SW. (2d) 524] at which appellant Tiedt had testified; and said, or indicated Tiedt would testify again in the instant case. The second is that appellant's own counsel in argument referred to his presence in the court room.

The third ground is that appellant's counsel Dale in argument to the jury referred to a written but unsworn statement which appellant had made at the police station, and argued it was true. The State in its case in chief had proven to the jury in great detail by three witnesses that the police and then prosecuting attorney had taken the unsworn statement from the appellant; that it was a faithful report of what he said; that he deliberated upon it; and that he executed it by interlining corrections, initialing each page and signing the whole. But having thus got the fact before the jury that appellant had made *a* written statement—thereby implying he had made some sort of a confession—yet the State did not introduce the statement in evidence, but let it "lie on the table," to use a legislative phrase.

Thereafter near the close of the case for the defense, appellant's counsel introduced the statement in evidence and read it to the jury. Having done so they did not put the appellant on the stand, but stood on the written statement. And appellant's counsel Dale in argument criticized the State for not introducing the statement after proving it, and argued it was true. Also he once referred to the fact that appellant was sitting in the court room. Following that argument Assistant Prosecutor Duvall answered, making the retaliatory argument complained of at the beginning of this opinion, to wit: "Mr. Dale complained of the fact that we didn't introduce

Tiedt's statement in evidence. Isn't that a crime men? Of course his statement was taken. *We didn't have any idea but what they would put him on the stand and we could have cross-examined him.*" (Italics ours)

Appellant's counsel promptly made adequate objection—there is no dispute about that—but the court overruled it, however calling Mr. Duvall to the bench and saying "What in the World were you thinking?" and admonishing him to keep within the record. Then the court instructed the jury that the instructions declared the law of the case; that the arguments of counsel were not evidence, and added: "The Court, Mr. Duvall, asks you to keep within the record *and the law.* As to the rights of this defendant, *counsel for the defense should recognize that an attorney for the State has certain rights in answering arguments concerning your case,* and the jury will disregard the last few remarks of counsel for the State, *as to what the defense could have done, or as to what the State could have done* in reference to"—appellant's written statement.

Thus the court in substance and effect told the jury that Mr. Duvall's argument *was* proper retaliation; but that they should *disregard* his last few remarks about what the defense could have done [that is, putting the appellant on the stand] or as to what the State could have done [by introducing the written statement in evidence.] All above italics ours. In overruling the new trial motion the court stressed the foregoing argument of defense counsel, Mr. Dale, and said it "manifested by inference the fact that defendant did not personally take the witness stand" whereas Mr. Duvall "was arguing only in reference to"—appellant's written statement [which is obviously incorrect]; and that Mr. Dale's "argument implied counsel for the State had failed in their duty."

Considering first the State's point that appellant's counsel in their opening statement disclosed the appellant had testified at the previous trial and indicated or said he would take the witness stand again. Under Sec. 4070(1), R. S. 1939, Mo. R. S. A. the prosecution must start a criminal trial by making an opening statement and offering evidence on its case in chief. Under the same statute, Sec. 4070 (2), the defense next makes its opening statement and offers its controverting evidence. But the defense may elect to make its opening statement immediately following that for the State, and before any evidence has been offered on either side. State v. Jackson, 105 Mo. 196, 230(5), 15 SW. 333. And that is what the defense did here.

His counsel then did not know what evidence the State would adduce, other than as disclosed by the State's opening statement. And that statement purported to detail testimony coming from witnesses. Only one reference was made to appellant's *written* statement, and that bore on a collateral matter—his lack of acquaintance with one decedent and his antecedent relations with another. There was little

or nothing to indicate it would be used by the State to prove the crime [and as eventuated, it was not]. In these circumstances it may well be that appellant's counsel intended then to have him testify.

But assuming they did, and for that reason so stated in their opening statement, it was not an admission or a promise but only a statement of present intention based on the facts then disclosed. If that was all that had occurred would anyone say the bars were down and the State was free to comment on appellant's later failure to testify? There are many times when counsel on either side make opening statements in criminal cases of facts which they expect to prove but later fail to follow up with substantiating proof. In by far the greater number of cases it is the prosecutors who offend, and in a considerable majority of them it is held not fatal to the proceedings. The test usually applied is whether the statement is relevant and was made in good faith.[3] And the rule is the same on the defendant's side.[4]

Neither was it error for appellant's counsel to say in their opening statement before the evidentiary issues were joined that he had testified at the former trial, or to refer to him afterward in argument as "this man sitting here today." That did not signify he had not testified in the trial here involved. Under Sec. 4054, R. S. 1939, Mo. R. S. A. he could not have been tried "unless he be personally present during the trial." And that statute refers to defendants who have not testified as well as those who have. In this case appellant had been before the eyes of the jury throughout and they knew he had not testified.

Nevertheless Sec. 4082 provided in effect that even though the jury knew that, still the fact could not be *construed* to affect his innocence or guilt, or to raise any presumption of guilt; nor should it be *referred to* by any attorney in the case, or *considered* by the jury. The vice proscribed by the statute is *comments* by counsel accentuating the defendant's failure to testify, whereby the jury are induced to consider his silence as pointing to his guilt because he has let the State's evidence go unanswered. In this case prosecutor Duvall not only made a direct reference to appellant's failure to testify, by saying the State thought the defense would put the appellant on the stand, but aggravated that by declaring if the defense had done so the State *could have cross-examined him*. Certainly that was not mere retaliation.

With reference to the third ground urged by the State and recognized in the principal opinion—that appellant's counsel Dale in argument to the jury referred to appellant's unsworn statement

---

[3] 16 C. J. § 2226, p. 889-90; 23 C. J. S. § 1085, pp. 526-9; 53 Am. Jur. §§ 454-7, pp. 356-9; and numerous decisions in 9 West's Mo. Dig. § 703, p. 341.

[4] 16 C. J. § 2227, p. 891; 23 C. J. S. § 1086, p. 531-3; 53 Am. Jur. §§ 454-7, pp. 356-9; 9 West's Mo. Dig. § 704, p. 34.

at the police station, and argued it was true. We think it plain the making and introduction of that statement did not deprive appellant of the protection afforded by Sec. 4082, supra. The opening clause of the section is:· "If the accused shall not avail himself * * * of his * * * right to *testify*" (italics ours)—the safeguards therein shall apply. But by making the statement· appellant· did not testify although he introduced it in evidence after its execution was proven by the State. To "testify" the testimony must have been given under oath, as is held in many decisions from various jurisdictions. 41 Words & Phrases (Perm. Ed.) p. 439, "Testify"; p. 441 "Testimony". And since the written statement was not made under oath, in law it amounted to nothing more than any unsworn statement he might have made on the street.

The principal opinion cites three groups of cases. The first group[5] embraces cases decided under Sec. 4082, supra, where the defendant had failed to testify. In every one of them the error was held reversible. The second group[6] includes cases decided under the same section where the argument violated it, but counsel was promptly rebuked by the court and retracted the remark and apologized. . In these the error was held cured. But in the Dodo case where that was not done the error was held reversible. A third group of cases cited are decisions in which there was intemperate and improper argument not involving Sec. 4082. As they are not in point we do not cite them here other than to say that one of them was the decision of this court on the former appeal of this case, 357 Mo. 115, 119(1), 206 SW. (2d) 524, 526(1-3).

We think further that there was not a prompt and proper rebuke in this case such as would cure the improper remarks of Assistant Prosecutor Duvall. As heretofore pointed out, the court, instead of rebuking counsel before the jury and exacting a retraction, merely asked *Mr. Duvall* to keep within the record and *the law;* that counsel for the appellant should recognize counsel for the State has certain *rights* in answering arguments [of the defense]; and that the jury should "*disregard* the last few remarks of counsel for the State as to what the defense could have done [putting appellant on the stand] or as to what the State could have done in reference to" appellant's written statement.

[5]State v. Robinson (Mo. Div. 2) 184 SW. (2d) 1017 (1); State v. Conway, 348 Mo. 580, 585(6), 154 SW. (2d) 128; State v. Mosier (Mo. Div.· 2) 102 SW. (2d) 620, 629 (14-20); State v. Shuls, 329 Mo. 245, 252 (7, 8), 44 SW. (2d) 94, 97 (8-10); State v. Watson, 1 SW. (2d) 837, 840 (9, 10); State v. Drummins, 274 Mo. 632, 643-6(4), 204 SW. 271, 275 (8); State v. Snyder, 182 Mo. 462, 523-5 (17), 82 SW. 12, 31 (10); State v. Moxley, 102 Mo. 374, 393(13), 14 SW. 969, 974 (11, 10).

[6]State v. Dodo (Mo. App.) 253 SW. 75, 76(3); State v. Taylor, 134 Mo. 109, 157-8(29), 35 SW. 92, 104 (11, 17); State v. Fitzgerald, 130 Mo. 407, 436(15), 32 SW. 1113, 1121(16).

610

This is not a criticism of the trial court. We recognize the trial was attended with great difficulties because of the publicity given the crime, the scarcity of competent jurors, and the novel legal questions unexpectedly presented. But the case involves a human life [good or bad makes no difference], and that consideration must come first in passing on the appellate issues. Whatever is decided here will stand as a precedent and affect other parties in future cases. For the reasons stated we think the judgment should be reversed and the cause remanded for a new trial.

*Leedy* and *Tipton, JJ.*, concur.