**STATE of Missouri, Respondent,**

v.

**Thomas T. GREEN, Appellant.**

**No. KCD 28632.**

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

The defendant was convicted of rape and sentenced to life imprisonment. On this appeal he contends that the argument of the prosecutor was a direct reference to his failure to testify and so the conviction should be reversed.

The evidence bears somewhat on the contention. The victim [L. F.] was asleep in the early morning in her bedroom on the second floor of the home she then shared with her sister [C. F.] and her brother [T. F.]. The defendant broke into the residence, first entered the bedroom of the sister on the first floor; she feigned sleep; so he went into the kitchen where he rummaged for a knife, and so armed went onto the second floor and into the bedroom of the victim. There he turned on the lights, practiced cunnilingus and then raped her. When he was done he was encountered by the brother who had just returned from work. The brother got hold of a baseball bat and chased the defendant from the premises into the street where he was taken by the police. The knife was found at the scene of the arrest.

The cross-examination of the victim by the defendant attempted to establish that she knew her assailant and submitted willingly.

Her testimony denied that defendant was an acquaintance, but rather that she was compelled to act by the threat of the knife at her throat.

The closing argument made by Mr. Bryant for the defendant argued the evidence in this manner:

. . . Gentlemen of the jury, let's begin our analysis by asking the question why Thomas T. Green appeared all too familiar at 2001 Brooklyn and the occupants inside. It appears from the evidence that Thomas T. Green knew exactly when and how to gain entrance into 2001 Brooklyn, knew that there was only a green trash bag covering the window because he was apprehended with no burglar tools at all. And when you couple this with the fact that he comes at the precise time that the mother is in the hospital and the brother is at work, it all appears to be just a bit too coincidental, especially when you consider that this man is alone and is supposedly armed with no more than a kitchen steak knife. How did he know that there would be no

one inside, armed with a shotgun ready to blow his brains out? That's just a bit too coincidental.

. . . . .

Gentlemen, I have raised a number of questions here. . . . and the Prosecutor has fifteen minutes to answer. I want those questions answered because as Instruction No. 8 tells you, his evidence must be consistent only with guilt and inconsistent with any reasonable theory of innocence. Only my theory answers these questions. Why the random and arbitrary selection of 2001 Brooklyn, why there were no burglar tools, how he knew there was only a green trash sack over the window, why he walked through the house at ease like he owned it, why he knew there would be no one there with a shotgun, why he would do it all with nothing more than a kitchen steak knife, why he attempted to turn on lights to insure his detection, why he left C. F. [the sister] unbound and why she did nothing, why a sex-crazed rapist would pass up C. F., why she does not scream, why he seems to go straight to L. F. [the victim's] bedroom. . . .

The prosecutor responded:

MR. STIGALL: Gentlemen of the jury, I will attempt to answer some of these questions that have been thrown at me. Some of them I can't answer. Some of them the State can't answer. We don't knew how this defendant knew these two girls were alone in the house that night. The State doesn't know how this defendant knew the mother was gone. The State has no knowledge of how this defendant knew the brother wouldn't be home until 2:00 or 3:00 in the morning. The State can't bring you that type of evidence. We have no knowledge why this defendant has perceptive powers.

MR. BRYANT: May we approach the bench, Your Honor? (Whereupon, the following proceedings were had in the presence, but out of the hearing of the jury:)

MR. BRYANT: Your Honor, I think Mr. Stigall is employing a very dangerous

tactic by saying, "We don't know how," and he was pointing at the defendant. By his continuous pointing at the defendant he is saying that he cannot explain it, but then points to the defendant as if to imply that the defendant should have taken the stand and explained it. I think he is, in a roundabout way, attempting to comment upon the failure of the defendant to testify.

THE COURT: The Court doesn't find any comment. The Court finds the State is answering your argument. If that's an objection, the objection is overruled.

MR. BRYANT: Thank you, Your Honor.

The defendant contends the response of the prosecutor was a reference to his failure to testify during the trial, and so violates his constitutional privilege against self-incrimination, as well as the assurances of § 546.270 RSMo 1969 and Rule 26.08 that his failure to testify shall not be subject to the comment of counsel. The prosecution replies that the argument of the counsel for defendant made reference to the silence of his client, and to that extent, the provisions of constitution, statute and rule were waived. The prosecution argues also, that in any event its responsive comments do not constitute the *direct and certain* reference to the failure of the accused to testify prohibited by constitutional and other procedures. *State v. Hutchinson,* 458 S.W.2d 553, 555[3] (Mo. banc 1970).

■ Our procedures do not allow the absolute right of a criminal defendant to refuse to testify against himself to be diminished by comment of counsel. Rather, the mandatory provisions of Rule 26.08 and counterpart § 546.270 forbid *any attorney in the case* from such a reference. *State v. Shuls,* 329 Mo. 245, 44 S.W.2d 94, 96[8–10] (1931). These protections, however, are personal to the defendant and may be waived by him. *State v. Mosier,* 102 S.W.2d 620, 628[15–17] (Mo.1937). If counsel for the defendant, for stratagem or advantage, calls attention to the silence of his own client, that waiver entitles the prosecutor to answer on those terms. And counsel for

the State may go further yet by way of such response and retaliation than would have been allowed him in the first instance. *State v. Tiedt,* 360 Mo. 594, 229 S.W.2d 582, 588[8–11] (1950).

Two cases, *State v. Tiedt, supra,* and *State v. Lindner,* 282 S.W.2d 547 (Mo.1955) define the parameters of this waiver principle. In *Tiedt,* defense counsel read the statement of defendant which gave his version of the crime to the jury, argued that to be the true story of the case, told the jury the defendant had testified in the first trial, and argued that it was up to the State to introduce that statement into evidence, but for reasons unknown, the State did not. The court concluded that each aspect of this argument emphasized the failure of defendant to testify, that [229 S.W.2d l. c. 588] "[s]uch an argument called for an answer, asked for an answer, and an answer was too be expected." The court found no error in the response by the State in closing argument that "[w]e didn't have any idea but what they would put him on the stand and we could have cross examined him". The court, instead, found a waiver by defendant of his right of non-reference under the statute and that the reply was invited.

In *Lindner,* the prosecutor referred specifically to the defendant and told the jury there was no evidence of any kind by him in the case. The remarks of defense counsel in closing argument restated the testimony of some of the witnesses but without any reference to the failure of his client to testify. The court concluded that the defendant had not invited the obvious comment by the prosecutor to his testimonial silence and ordered a reversal.

█ The present case resembles *Tiedt.* The argument by counsel for the defendant here hurled one challenge after another for the prosecutor to answer: "I have raised a number of questions and the Prosecutor has fifteen minutes to answer. I want those questions answered . . . Only my theory answers these questions. *Why* the random and arbitrary selection of 2001 Brooklyn, *why* there were not burglar tools . . *why* he walked through the house at ease

like he owned it . . ." (Emphasis added). These imputations of doubt on the prosecution case were repeated nineteen times, each *why* was a separate summons for a reply by the State. The defense theory—as appears from the cross-examination and argument—suggests an assignation between the victim and defendant, that he was invited and expected. Thus the argument was an attack on the credibility of the proof offered by the State, especially the testimony of the victim. It was also a rhetorical assertion that the defendant throughout was of an innocent state of mind: "why he knew there would be no one there with a shotgun . . ., why he attempted to turn on lights to insure his detection, why he left C. F. [the sister] unbound and why she did nothing, why a sex-crazed rapist would pass up C. F., why she does not scream . . .". The questions raised, however, are only those the defendant himself could answer, and in that real sense the argument of counsel raised and emphasized the failure of his client to testify. These remarks of defense counsel not only waived the right of his client to be free from that reference [*State v. Tiedt, supra; State v. Mosier, supra*] but also were a comment on the silence of the client in violation of § 546.270 and Rule 26.08.

The question remains whether the conduct of the State was proper retaliation. The prosecutor made his response, answer for question—one by one: "We don't know how this defendant knew these two girls were alone in the house that night. The State has no knowledge of how this defendant knew the mother was gone . . . The State can't bring you that type of evidence. . . .". Each argument answered hardly more than the question had asked and so was condign and proper. The intimation of this response that the answers sought by the defense were known by the defendant alone was fairly invited by the initial argument.

The judgment is affirmed.

All concur.