THE STATE v. GENE HIGGS, Appellant.—29 S. W. (2d) 74.

Division Two, June 11, 1930.

*Dan Johnson* for appellant.

*Stratton Shartel*, Attorney-General, and *Smith B. Atwood*, Assistant Attorney-General, for respondent.

DAVIS, C.—Defendant was convicted in the Circuit Court of Ray County, under Section 3269, Revised Statutes 1919, of the felony of kidnapping one Milo Rone. The verdict of the jury found defendant guilty, and assessed his punishment at seven years in the penitentiary. Defendant appealed from the judgment entered on the verdict.

The evidence submitted warrants the finding that, on May 23, 1928, about three o'clock in the afternoon, defendant, accompanied

by one Reidl, so drove an Overland coach that it collided with a Buick automobile driven by one of two sisters who occupied it. The cars were wrecked. Defendant and Reidl informed the girls of their intention to proceed to a farm house to telephone for help. They started thither, but passed the house and went towards the Missouri River. A crowd gathered at the scene of the wreck, and observing that they passed the farm house, they were followed to the river. Defendant and Reidl, observing some of the crowd following, fled and were pursued. After a command to halt, one of the pursuers fired two shots from a pistol into the air. Reidl stopped and was taken in charge. Defendant fled to a farm house, the pursuers following. On reaching the farm house, defendant appeared from behind it with a pistol in his hand and commanded them, "Stick 'em up." An automobile was standing there. On defendant attempting to start it, the carburetor became flooded and it failed to start. He then commanded that the driver start it, threatening to kill him if he failed.

At this time Milo Rone drove up in his Ford car, and defendant accosted Rone, threatening him with his pistol and commanding him to drive on. Thus compelled by defendant, Rone drove the car with defendant in it by circuitous routes westward through Liberty and over the Missouri River bridge at Leavenworth into the State of Kansas. On the way thither defendant took some bills from Rone. On arriving at a secluded place in the country in Kansas, defendant compelled Rone to disrobe, whereupon he took from him loose change and drove away in Rone's Ford car. It was later found in Kansas City. Missouri officers pursued Rone's car as it traveled from Ray County to Leavenworth, and at one place defendant exchanged shots with the officers.

Defendant offered no evidence in his behalf.

Section 3269, Revised Statutes 1919, reads:

"If any person shall, willfully and without lawful authority, forcibly seize, confine, inveigle, decoy or kidnap any person, with intent to cause such person to be sent or taken out of this State, or to be secretly confined within the same against his will, or shall forcibly carry or send such person out of this State against his will, he shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding ten years. Any person charged with such offense may be tried in any county into or through which the person so seized, inveigled, decoyed or kidnaped shall have been taken, carried or brought."

I. It is submitted that the information does not contain averments sufficient to constitute the offense denounced by the statute.

Defendant, in presenting the question, avers that the kidnapping of any person "with intent to cause such person to be sent or taken out of this State" is a necessary element of the offense of forcibly carrying or sending such person out of this State against his will, and must be averred. The statute, we think, provides two methods by which kidnapping may be effected. In the first method, that of wilfully and without lawful authority forcibly seizing, etc., any person, the specific intent to cause such person to be sent or taken out of this State, or to be secretly confined in the same against his will, is a necessary element. The offense is complete when the person is forcibly seized with the intent to take him out of this State or to secretly confine him in this State against his will. In this instance the intent must be averred. The second method of kidnapping a person under the statute is that of forcibly carrying or sending such person out of this State against his will. In this method the statute does not make intent an element of the offense, and it is not necessary to allege it in the information. By deleting words and portions of the context of the statute and giving it the interpretation intended by the General Assembly, as we think, it coherently reads: "If any person shall, willfully and without lawful authority, forcibly carry or send any person out of this State against his will, he shall," etc. The context develops that the General Assembly intended by the statute to make it an offense to carry or send any person out of this State against his will, when done wilfully and without lawful authority, irrespective of whether at the time of seizure, etc., or thereafter while under restraint, the defendant intended to cause such person to be sent or taken out of this State, or to be secretly confined within this State against his will. It was unnecessary to allege the intent, and, consequently, the contention of defendant that the information failed to state facts sufficient to constitute an offense against the laws of this State is overruled.

II.  Defendant avers that his demurrer to the evidence should have been sustained as the evidence as a whole negatives an intention on the part of defendant to take and carry Rone out of the State upon defendant seizing and restraining him. This contention is based on the postulate that it was necessary for the information to aver and the State prove that, at the time defendant seized and restrained Rone, he intended to carry or send Rone out of this State against his will. We have just said in the preceding paragraph of this opinion that an initial intent to carry or send one out of this State at the time of seizure was not an element of the offense of wilfully and without lawful authority forcibly carrying or send-

ing a person out of this State against his will. If one forcibly carries or sends another out of this State against his will, wilfully and without lawful authority, he has violated the statute under consideration. Of course in thus acting, there must be a criminal intent present, but that intent may be inferred from his acts. It is not, however, the same elemental intent necessary to convict one of forcibly seizing, etc., another, with intent to cause him to be sent or taken out of this State, or to be secretly confined in this State against his will. In the first instance the offense arises when the person is seized with such intent, whether or not he is actually sent or taken outside this State. In the second instance the offense arises only on being taken out of this State, wilfully and without lawful authority, against his will. In the first instance mere seizure of a person without evidence *aliunde* of the specific intent to forcibly take a person out of this State or secretly confine him in this State is insufficient to sustain a conviction. In the second instance the intent may be inferred from the act of taking such person out of this State. We think the case was properly submitted to the jury under the information. This ruling also disposes of defendant's objections to the principal instruction in the case.

III. The final assignment of error reads: "The alleged robbing of Milo Rone while in the motor car with appellant either in Missouri or Kansas did not tend to prove or disprove any of the issues in the case of kidnapping, and did not come within any of the exceptions wherein proof of another independent crime is allowed to be shown. It was highly prejudicial." The evidence tends to show that on the way from Ray County to Leavenworth, Kansas, and while still in Missouri, defendant compelled Rone to deliver against his consent some bills of money; and that, after stopping in the State of Kansas, defendant took from Rone against his will loose change.

We think the evidence was admissible, first, as a part of the *res gestae;* second, as tending to show that Rone was under the domination of defendant, and that the carriage of Rone through Missouri and into Kansas was against his will. While the taking of Rone's money was only one of the facts proven as tending to show that he was being taken against his will, nevertheless it was a fact properly admissible for that purpose. It is true that the offense was complete when Rone was taken into the State of Kansas and left there, but evidence of the taking from him of the loose change in Kansas, even if inadmissible, was not prejudicial, in the light of the evidence that he took from Rone some bills of money while on the forced journey. [State v. Anderson, 252 Mo. 83, 158 S. W. 817.]

As we find the record and the record proper free from prejudicial error, the judgment must be affirmed. It is so ordered. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.