**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jerome Darnell BOLDEN, Defendant-Appellant.**

**No. 35906.**

Missouri Court of Appeals, St. Louis District, Division Three.

July 1, 1975.

Charles D. Kitchin, Public Defender; John E. Bell, James C. Jones, and Marilyn Wallach, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen.; Preston Dean and Scott A. Raisher, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant, Jerome Darnell Bolden, was found guilty by a jury of assault with intent to maim with malice and was sentenced by the court under the Second Offender Act to 35 years imprisonment. § 556.280, RSMo 1969, V.A.M.S. He appeals. For reasons hereinafter stated, we affirm the judgment of conviction.

Defendant does not question the sufficiency of the evidence; hence only those facts necessary for the disposition of this appeal will be stated.

The incident for which defendant was tried and sentenced occurred during the early morning hours of June 8, 1973. At about 1:00 a. m., Jerome and Debra, his

wife of about a month, were at Jerome's parents' home in St. Louis. They quarreled over a particular letter. The two left the house and went to the house of defendant's brother's girlfriend, Gloria. According to Debra, behind that house, defendant hit her with his fist, "busted" her lip and "put a knot on the side of [her] head." He also picked up a "stick or an iron pipe" and hit her in the side. She fell. While lying there, defendant kicked her. The two then returned to Jerome's parents' home. Defendant told Debra to wash her face and "hurry up and get through" because defendant "was going to kill me." They again left the house and walked down Newstead Avenue. In the vicinity of Newstead and St. Louis Avenues, defendant picked up a brick and threatened to "crack" Debra's head. Then he picked up a whiskey bottle, broke it on a lamp post and "stabbed me in my side." Debra said he then "stabbed me" in the eye. After this incident, the two started walking toward Homer G. Phillips Hospital, a few blocks away. At Lambdin and St. Louis Avenues, Police Officer Terran Williams saw them, stopped and took both Jerome and Debra to the hospital.

About an hour and a half after arriving at the hospital, and when the defendant was not present, Debra told Officer Williams what had happened. She also told a Miss Chew, a friend of defendant, referred to as defendant's "godmother," who happened to be in the emergency room, that defendant stabbed her and pleaded with Miss Chew not to tell defendant what Debra told her. Miss Chew, however, testified that Debra told her that "some men jumped her on the street and tried to rob her." Debra was hospitalized 44 days; as a result of the incident, Debra's damaged eye had to be removed and was eventually replaced

with a plastic eye. During her stay at Homer Phillips, defendant visited Debra some five times.

The defendant denied that he assaulted his wife and explained that while he and his wife were walking he and his wife parted— she went to get something to eat and he went across the street to a gas station. When he came out of the gas station, he saw some men surround Debra trying to rob her, and he came over to her. She was injured.

The defendant's mother, father and Miss Chew testified on his behalf. His mother and father testified that they did not hear or see Jerome threaten or injure Debra that evening at their home. Miss Chew testified that Debra told her at the hospital that some men "jumped" her.

During the trial, which began on Wednesday, November 28, 1973, the following occurred which gave rise to the defendant's various points on appeal.

During *voir dire* examination, defendant's counsel announced he was "not ready to try this case" and requested a continuance or at least that the case be "held over" until the next Monday, December 3rd. The trial court noted that defendant's counsel had entered his appearance on September 24, and had over sixty days to prepare for trial.[1] Four prior continuances had been granted at the request of defendant.[2] The court denied the motion for continuance, but granted counsel leave to file an affidavit formally stating his request. The affidavits apparently were not filed until December 13, 1973, after the trial. Although the transcript indicates that the affidavit was "filed" on November 28, 1973, counsel's signature was notarized on December 13. An affidavit of the trial court states:

---

1. Defendant's counsel apparently had been assigned the case as early as August 13, 1973, for the record shows a letter to the defendant from the Public Defender's Office informing him of defense counsel's appointment.

2. Continuances for the defendant were granted on August 6, September 24, October 22, and November 19.

"There is in this file an affidavit in support of motion for continuance which is dated and stamped in the Office of the Circuit Clerk, December 13th, 1973. Obviously if any said motion was filed it was filed on that date. It further appears to this Court that someone requested the Clerk of the Court to scratch out December 13th and insert the date of November 28th, 1973. . . ."

During trial and on Friday, November 30, 1973, defendant's counsel made a second, separate request for continuance while discussing the jury instructions in chambers. He stated that Gloria [Drummond] and her mother, both of whom may have witnessed a portion of the assault, were out of town. He renewed his request for a continuance, at least until the followimg Monday "to give the defense the opportunity to locate and produce this witness [sic]." The court noted that counsel had "at no time" indicated the absence of the witness and had not followed the procedure for requesting a continuance, and "I specifically have reference to the filing of an affidavit and no affidavit was filed in this case." The court denied the request. Affidavits were filed apparently on December 13, alleging grounds for a continuance.

At trial, Dr. H. Philip Venable, Director of the Ophthalmology Department at Homer G. Phillips Hospital, testified that he treated Debra. He testified that he attempted to stop the leakage in the eye and that eventually the damaged eye was removed because an injury to one eye could cause the loss of the "good" eye "and that is the reason this eye was removed." Not only to get rid of this bad eye but to prevent this eye from involving the only eye she had left." No objection to this statement was made. Dr. Venable testified that he had not seen her in at least two months, but the last time he saw her the right eye was normal. At that point defense counsel approached the bench and objected to any development as to "what might" happen to the right eye because this would call for speculation. The court stated after the objection that it would allow the doctor to testify if "based upon his experience, and with reasonable medical certainty."

Dr. Venable testified that, based on his experience, if the "good" eye is to be affected by the damaged eye, it would occur "within 10 days to two weeks or certainly up to two months" in 80% of the cases. He further testified that he had three cases out of some 2000 in which the condition to the other eye occurred more than a year after the initial injury. This statement was objected to as "irrelevant, immaterial, not competent to prove any issue in this case and it is prejudicial." The objection was overruled.

During the cross-examination of Dr. Venable by defense counsel in answer to a question relating to the procedures concerning visitations at the hospital at off-hours, Dr. Venable answered:

"[H]e [a visitor] has to identify himself and also for security reasons he must identify himself as to whether or not— what his relation is to the patient especially in the City Hospital *because sometimes a person that comes in is the person that inflicted the injury in the first place* —" (Emphasis added.)

Defendant asked that this "last volunteered portion" be stricken; however, the court "let it stand for what it is worth."

During closing argument to the jury, the prosecutor stated:

"Ladies and gentlemen, why would Debra Bolden come in this courtroom after having been inflicted with a severe injury on her and go through weeks of hospitalization and several major operations and had her left eye removed *and have the potential to lose her sight*—" (Emphasis added.)

Defendant's objection (without stating grounds) was overruled.

Later in the second half of his closing argument, the prosecutor stated:

"Why did all of a sudden Jerome [defendant] appear in this courtroom out of the clear blue sky? Nobody was looking for him because we were looking for a bunch of robbers and now Jerome sits here at this table—no, *that doesn't carry any weight. Does that prove he is not guilty? The burden of proof is on me.*" (Emphasis added.)

Defendant objected on the ground that he "doesn't have to prove that Mr. Bolden is not guilty." The court overruled the objection and noted that it "has fully instructed the jury on the burden of proof."

The amended information under which defendant was tried alleged that defendant had been convicted on April 23, 1971, for the offense of second degree burglary, sentenced to four years imprisonment and paroled on February 13, 1973.

At an evidentiary hearing out of the jury's presence during trial, defendant acknowledged and stipulated to the fact that he was convicted of burglary in the second degree but indicated that the Amended Information incorrectly listed his place of confinement at Moberly. State's Exhibit No. 2, a certified transcript of serial record, indicated that defendant had been convicted of second degree burglary, was sentenced for four years imprisonment on April 23, 1971, and was paroled on February 13, 1973.

A deputy clerk of the circuit court read an entry dated February 20, 1970, from the court's records that defendant had pleaded guilty to burglary second degree, was sentenced and placed on probation. The clerk also read an entry of April 23, 1971, which stated that the probation entered on February 20, 1970, was revoked. After the reading of the entries, the trial court stated that:

"[T]here is no question in the mind of the Court that this defendant was previously convicted and has been guilty of a felony under the laws of this State and was imprisoned in the Department of Corrections and this Court doesn't know whether he was imprisoned in Jefferson City or Algoa or Moberly . . . ."

After the jury was instructed, the jury returned a verdict of guilty of assault with intent to maim with malice. Then on December 13, 1973, the court sentenced the defendant to 35 years in the Department of Corrections.

After the trial and after sentencing on December 13, 1973, and after notice of appeal was filed on December 14, 1973, the court held a hearing on January 22, 1974, under Rule 26.05, V.A.M.R. to supplement the record. At this post-trial hearing, the deputy clerk of the circuit court read from the files. The records show that on January 4, 1971, probation, which was given February 20, 1970, was revoked, and defendant was ordered to serve sentence. The records further show that on April 23, 1971, the order of February 20, 1970, was set aside and that defendant "withdraws his former plea of not guilty and now enters a plea of guilty to the crime of burglary second degree, said plea being accepted . . . and . . . it is therefore sentenced, ordered and adjudged . . . that the said Jerome Bolden having pleaded guilty be committed to the Department of Corrections . . . for a period of four years . . . ."

On this appeal, the appellant makes several points urging that the case should be reversed. We find that there was no prejudicial error committed and affirm the judgment of conviction.

I

Defendant's first point is that the trial court erred in denying his motion for continuance "made prior to the onset [sic] of the proceedings, and renewed at the conclusion of the state's rebuttal evidence, on the

ground that said ruling denied defendant a fair opportunity to prepare his defense and denied him the opportunity to procure material evidence . . . ." [3]

■ Supreme Court Rule 25.08 provides that continuances may be granted for good cause shown, but it is well settled that applications for continuances are addressed to the sound discretion of the trial court and an appellate court will not interfere unless it is clearly shown that such discretion has been abused. *State v. LeBeau,* 306 S.W.2d 482, 486 (Mo.1957); *State v. Lee,* 492 S.W.2d 28, 30 (Mo.App.1973). In *State v. Collie,* 503 S.W.2d 445, 446 (Mo.App.1973), we said it requires a very strong showing to induce an appellate court to disturb the action of the trial court. We certainly cannot say that there has been an abuse of discretion by the trial court in this case.

Defendant argues that a continuance should have been given for a few days—until the following Monday—because the "pressure of his [defense counsel's] heavy caseload had prevented him from devoting any time to the preparation of the defense of this most serious charge." Defendant also argues that counsel did not have an opportunity to interview Debra and other witnesses which Debra mentioned in her direct testimony. But counsel for defendant entered his appearance on September 24, 1973, and apparently was assigned the case earlier; four continuances were granted on defendant's behalf; counsel could have interviewed Debra prior to trial. In view of all these circumstances, while we remain sympathetic to the pressures on public defenders, we cannot conclude that the court erred in not granting a continuance. [4]

Nor did the trial court abuse its discretion in refusing defendant's second separate request for continuance at the end of the case on the ground that two witnesses—Gloria Drummond and her mother—who may have seen "a portion of the assault," were out of town. Defendant apparently sought their testimony in an attempt to question the credibility of Debra Bolden. Debra testified that Gloria and her mother witnessed one of defendant's assaults upon her, but she did not tell the police this fact. For two reasons, we find no abuse of discretion in denying the motion on the ground of absent witnesses.

■ First, denial of a continuance for purposes of securing absent witnesses whose purported testimony would not bear directly on defendant's guilt or innocence is not error. [5] Nor will a conviction be set aside unless it is reasonably probable that a different result would have been reached had the absent witnesses testified. *State v. Reece,* 505 S.W.2d 50, 52 (Mo.1974), and authorities cited therein.

■ In the case at bar, these two absent witnesses could, at best, testify as to an event prior to the *specific assault* for which defendant was tried. They apparently saw the event—whether defendant hit Debra with his fist and a stick or iron pipe near Gloria's mother's house several minutes pri-

3. Appellant contends that the denial of a continuance resulted in a denial or abridgement of his rights to due process of law, to the equal protection of the law, to effective assistance of counsel and to compulsory process for obtaining witnesses in his favor.

4. The trial court noted at the conclusion of the trial that the record shows that defense counsel "had a thorough and complete knowledge of the case . . . ." This would seem to belie the claim that there was a denial of effective assistance of counsel.

5. Defendant's reliance on *State v. Sherrell,* 198 S.W. 464 (Mo.App.1917), is misplaced. In *Sherrell,* a prosecution for selling a half pint of whiskey in violation of a local option law, defendant alleged that two absent witnesses would testify that the State's chief witness (the person to whom defendant allegedly sold the whiskey) told them he did not purchase the whiskey from defendant. The appellate court held that where guilt of defendant was doubtful denial of a continuance was an abuse of discretion, because such testimony bore directly on defendant's guilt or innocence.

or to the assault which resulted in Debra's eye injury and at a location different from the intersection where the whiskey-bottle assault took place. Thus, the absent witnesses' possible testimony would not bear directly on defendant's guilt or innocence but would test only the collateral question of Debra's credibility. Under these circumstances, we see no abuse of discretion in denying defendant's motion for continuance.

■ Defendant also argues in his motion for new trial and in his brief that he should have been granted a continuance in order to secure the testimony of a second police officer, whom defendant's witnesses said was with Patrolman Williams at the hospital. Officer Williams previously had said he was patrolling his assigned area alone but on rebuttal indicated that his partner left him about 3:00 a. m. The second policeman's testimony would deal only with events after the assault—the condition of the victim, what the affected persons said—not with the alleged assault. Even if the second officer (if in fact there was one) might have given testimony which bore on defendant's guilt, defense counsel was given opportunity by the trial court at the beginning of the case to search the police records pertaining to the identity of the second policeman. Furthermore, when the second request for continuance was made during discussion of the instructions, in chambers, the oral motion did not include as one of the grounds therefor, the possible testimony of the "absent" officer. Under such circumstances, we believe that the trial court did not err in denying the continuance on this ground.

■ Second, defendant has failed to comply with the requirements of Rule 25.08. Initially, defense counsel did not file an affidavit to support his motion for continuance. Failure to submit an affidavit or to obtain leave to file it subsequently is sufficient violation of Rule 25.08 in itself to warrant denying a motion for continuance.[6] See *State v. Cuckovich,* 485 S.W.2d 16, 21–22 (Mo. banc 1972). Even his tardy affidavit—filed at least as late as December 13, 1974, two weeks after the trial—fails to follow the requirement that an affidavit in support of a motion for continuance on account of an absent witness must include, *inter alia,* a statement of the facts the witness will prove, that he believes them to be true and what diligence has been used. Rule 25.08(b).

For all the foregoing reasons, we hold that the trial court did not err in denying the requests for a continuance.

## II

Appellant's second point is that the trial court erred in admitting the testimony of Dr. Venable "as to the possible transference of infection[7] [damage?] to Debra's right eye, because such testimony was irrelevant, immaterial, and conjectural and served only to mislead and prejudice the jury."

Dr. Venable testified that, based on a reasonable degree of medical certainty, in 80% of cases transfer [of damage] would occur within ten days to two weeks or certainly up to two months, but that "I have had three cases in my experience in which this condition occurred after a year. I have had three cases of my own out of some 2000 cases." After the prosecutor indicated he had no further questions, defense counsel at the beginning of his cross-examination objected because the statement of three cases "out of some one or two thousand" would be beyond medical certainty. The court stated that "I'll let the jury determine that."[8]

---

6. The trial court aptly informed defense counsel of the affidavit requirement, but counsel did not seek leave to file an affidavit subsequently.

7. There was no mention of the word "infection."

8. Defense counsel did not object to Dr. Venable's earlier testimony that he considered removing Debra's eye because otherwise an injury to the left eye could cause loss of the good eye.

■ Defendant's motion for new trial alleged that this testimony "constituted speculation on the part of the witness rather than expert testimony based on reasonable medical certainty, was thus beyond the witness' area of expertise, invited the jury to guess and speculate, and was highly prejudicial . . . ." On appeal, defendant now argues that this testimony is irrelevant, immaterial and conjectural and served only to mislead and prejudice the jury. These grounds were not raised in the motion for new trial and have not been properly preserved. *State v. Bowens,* 476 S.W.2d 495, 499 (Mo.1972); Rule 27.20(a).

■ But if properly preserved, we hold the court did not err in admitting this testimony. Dr. Venable's testimony was based on his knowledge of some two thousand cases of eye damage treated over a period of over thirty years. He was director of the ophthalmology department at one hospital and was on the staff of seven other hospitals. The test of an expert's qualification is whether his testimony is based on knowledge from education or experience, *Billings v. State,* 503 S.W.2d 57, 61 (Mo. App.1973), and whether the expert's testimony has a factual basis and was not based on speculation and conjecture. It was within the trial court's discretion to allow the expert to testify based on his extensive experience as to the percentage of cases in which damage in one eye is transferred to the other eye.

■ Nor do we consider the testimony irrelevant or immaterial. The test of relevancy depends upon whether the evidence tends to prove, disprove, support or establish a fact in issue or to corroborate evidence which bears upon the issue. *State v. Walden,* 490 S.W.2d 391, 393 (Mo.App.1973), and authorities cited therein; *State v. Jenkins,* 516 S.W.2d 522, 525 (Mo.App.1975). The possible transference of damage to the right eye tends to prove the damage done to the eye which was lost.

### III

■ Appellant next urges that the trial court erred in refusing to strike Dr. Venable's volunteered statement in answer to defense counsel's question relating to hospital procedures that a person seeking to see a patient at the hospital has to identify himself "because sometimes a person that comes in is the person that inflicted the injury in the first place—." Defendant characterizes this statement as "not responsive to the question asked, . . . beyond the field of Dr. Venable's expertise, and . . . highly prejudicial to the defendant's right to a fair and impartial trial."

We disagree. It is to be noted that the procedures at the hospital were brought out by the defense, not the prosecution. We do not believe the answer was wholly unresponsive. We believe that Dr. Venable's statement had a factual basis and was not based on speculation and conjecture. He had been medical director for two years and chief of its medical staff for ten years. He stated that he had a "pretty good knowledge of how the hospital is run and the procedures of the hospital." We cannot conclude that the trial court erred in this regard.

### IV

Next, defendant complains of certain statements of the prosecutor in closing argument. During the state's argument, defendant objected (without stating grounds therefor) to the reference of the possibility that Debra had "the potential to lose her sight—." The objection was overruled. Counsel also objected to a second comment by the prosecutor in the second half of his argument. During defense counsel's argument, he argued that it was unlikely that Debra had in fact told the police that defendant had injured her because the police did not immediately seek out defendant and he visited her in the hospital several times.

The prosecutor then argued, "Does that prove he is not guilty? The burden of proof is on me."

 While an accused is entitled to a fair trial, and it is the prosecutor's duty to see that he gets one, the prosecutor has wide latitude in argument. The trial court has wide discretion in determining the latitude in permitting argument of counsel, and we will not reverse unless there is an abuse of that discretion. As long as a prosecutor stays within the evidence and its reasonable inferences his argument is quite legitimate. *State v. Taylor,* 508 S.W.2d 506, 514 (Mo.App.1974); *State v. Fox,* 510 S.W.2d 832, 838 (Mo.App.1974).

 We find no abuse of discretion here. The possibility of eye damage to the right eye was in the record; Debra testified that the vision in her right eye became blurred every now and then and "blacked out" on her at least once. The argument was within the legitimate inferences from the evidence.

 As to the second comment, this did not place the burden of proof on the defendant. The court instructed the jury as to the burden of proof and the prosecutor in the next breath reminded the jury that the "burden is on me."

We find no error in the statements complained of.

## V

Lastly, appellant contends that the trial court erred in its findings regarding the Second Offender Act "at a time when it had lost jurisdiction to do so."

The amended information alleged that defendant had been convicted of second degree burglary on April 23, 1971, and that he was sentenced in the Department of Corrections for a term of four years "and was duly imprisoned in the Missouri Training Center for Men, Moberly, Missouri on May 7, 1971 . . . ."

As we perceive the record, the defendant, after a plea of guilty to burglary, was sentenced on February 20, 1970, and placed on probation; that on April 23, 1971, the February 20, 1970 conviction was set aside and the defendant, having entered a plea of guilty, was then sentenced on the burglary charge to the Department of Corrections. He was received by the department on May 7, 1971, and finally paroled on February 17, 1973.

 At trial, on the proof of the prior conviction, the defendant clearly admitted the conviction of burglary second degree.

"[Defense counsel]: . . . Mr. Bolden has indicated to me that he is willing to stipulate to the facts that on the 23d of April, 1971, he was convicted of the offense of Burglary Second Degree. He does indicate, however, that the Amended Information incorrectly alleges his place of confinement as being the Missouri Training Center for Men at Moberly."

Through counsel, defendant also admitted that he was imprisoned and released on February 13, 1974. When the trial court asked defendant if his counsel's statements were correct, he admitted he was convicted, but "got the conviction in—[1970]."

While the record is not entirely clear as to precise dates, there is undoubtedly sufficient evidence to support the court's finding that the Second Offender Act was applicable.

Under § 556.280, the important considerations are that (1) defendant was convicted of a prior offense punishable in the penitentiary, (2) defendant was sentenced for the offense, and (3) he was imprisoned, or fined, or paroled or placed on probation for the offense. *State v. Blackwell,* 459 S.W.2d 268, 272 (Mo. banc 1970).

There is no doubt each of these elements is present. Defendant admitted each of the elements. Such admissions are sufficient to support a finding that § 556.280 is applica-

ble. *State v. Reagan,* 328 S.W.2d 26, 30 (Mo.1959).

And the post-trial hearing held on January 22, 1974, is additional proof that the Second Offender Act was applicable. Its purpose was not to prove up the prior conviction but to clarify and correct the record. Rule 26.05 allows the trial court to amend any proceedings "at any stage of the proceeding" including the appellate process[9] before "final disposition of the case." The trial court attempted to correct the possible confusion over the exact date of the prior conviction. In doing so, the court acted within the authority of Rule 26.05. The court filed its memorandum finding a prior conviction beyond a reasonable doubt.

■ Appellant relies on Rule 75.01 for the proposition that the trial court lost jurisdiction over the judgment prior to the date of the January 22, 1974 hearing. Rule 75.01 states that the trial court retains control over judgments during a period of thirty days. This rule does not affect the authorization of Rule 26.05 to amend proceedings. Likewise, Rule 27.22 does not limit the trial court's authority to amend or correct the proceedings.

### VI

We therefore hold that the trial court did not err in: (1) denying the requests for continuance, (2) admitting the evidence of Dr. Venable, (3) in permitting the argument of the prosecutor, and (4) finding that the Second Offender Act was applicable.

We have read the entire transcript, the briefs of the parties and the authorities relied upon by the appellant, and we are convinced that there was no prejudicial error committed. Hence, the judgment of conviction should be affirmed.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.

9. Rule 26.05 is entitled "Amendment of Record During Trial or Upon Appeal."