**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Donald Warren KNAPP,
Defendant-Appellant.**

**No. 36504.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 23, 1975.

Motion for Rehearing or Transfer
Denied Feb. 26, 1976.

Application to Transfer Denied
April 14, 1976.

Rosecan, Popkin & Chervitz, Alan G. Kimbrell, St. Louis, for defendant-appellant.

Philip M. Koppe, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., George R. Westfall, Roger S. Murphy, Asst. Pros. Attys., Clayton, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals from his conviction of murder in the first degree for which he received a sentence of life imprisonment. Defendant alleges reversal of his conviction on three grounds: 1) that the trial court abused its discretion in refusing to grant a delay in the trial to allow the defendant to present a material witness; 2) that the trial court erred in refusing to allow inquiry of the jury panel during voir dire examination whether they would follow the court's anticipated instruction concerning the material elements of the offense charged; and 3) that the trial court erred in overruling an objection to argument of the prosecutor alleged to be highly inflammatory. For the reasons which follow, we affirm the judgment.

The sufficiency of the evidence is not challenged. Defendant was working the night shift at a small machine factory in Crestwood, Missouri. At approximately 6:00 p. m. he was apparently reproached by his foreman, Bill Pappas, about his work at his particular machine. Defendant became mordant and stalked off his job. Mr. Pappas notified the plant supervisor of the incident, and near 9:00 p. m. defendant's time card was removed, an apparent indication of disciplinary action against defendant. Defendant was discovered about 10:00 p. m. by a fellow employee at a nearby tavern and advised of the time card removal. At approximately 11:00 p. m., defendant returned to the plant with a revolver, sought out Bill Pappas and proceeded to shoot him three times, inflicting mortal wounds. The incident was witnessed by several persons who testified at trial that they observed the defendant shoot Mr. Pappas and then unhurriedly leave the plant. Defendant was arrested early the next morning in Troy, Illinois. When approached by Troy police, defendant readily acknowledged killing Mr. Pappas; the revolver used to kill Mr. Pappas was in defendant's possession.

On November 9, 1973, defendant entered pleas of not guilty and not guilty by reason of mental disease or defect. Thereafter he was examined by two psychiatrists and given an electroencephalograph examination by another physician, resulting in defendant's ultimate withdrawal of his plea of not guilty by reason of mental disease or defect, leaving only his plea of not guilty in effect.

After five continuances, three at defendant's request, trial was set for April 1, 1974. On April 1, defendant withdrew his plea of not guilty by reason of mental disease or defect. The case was then continued by the court to Wednesday, April 3, 1974 at which time the trial commenced. The State rested its case at approximately noon on Thursday, April 4. At the close of the State's case defendant's counsel made an oral motion for a recess to make possible the appearance of a psychologist for the defense. In his oral motion, defendant's counsel stated that the psychologist, Dr. Allen Barclay, who had examined defendant on Tuesday, April 2, was in Florida and would not return to St. Louis until 4:00 p. m. on Friday, April 5; that Dr. Barclay, based on some hypothetical information given him by defendant's counsel, had indicated by telephone communication that the defendant may have been incapable of considering his actions coolly and fully. The trial court was advised that Dr. Barclay would not be available until at least 4:00 p. m. on Friday, April 5, or "possibly thereafter." The trial court, after discussion with defendant's counsel and hearing an offer of proof as to Dr. Barclay's testimony, denied the request for recess. The defense produced no witnesses.

 Defendant's first point of error is that the trial court erred in overruling his motion for recess. The law concerning this issue is plentiful, positive and precise; the trial court is vested with broad discretion in ruling on motions for continuance and absent a palpable abuse of that discretion, refusal to grant a continuance—or, in this case, a somewhat indefinite recess—does not form a basis for reversal by an appellate court. *State v. Reece*, 505 S.W.2d 50 (Mo.1974); *State v. Blankenship*, 526 S.W.2d 78 (Mo.App.1975); *State v. Winters*, 525 S.W.2d 417 (Mo.App.1975); *State v. McDowell*, 525 S.W.2d 444 (Mo.App.1975); *State v. Bolden*, 525 S.W.2d 625 (Mo.App. 1975). The defendant had ample opportunity to seek the advice of experts on defendant's mental condition. And, indeed, defendant's counsel did conduct a valiant and diligent search for and did obtain expert advice as to defendant's mental condition, but, apparently none, but perhaps Dr. Barclay's, was salutary for defendant's purposes. Further, there was no assurance that Dr. Barclay would bear the desired report for the defendant. In any event, defendant had ample opportunity prior to trial during the period of continuances from November 9, 1973 to have obtained or preserved Dr. Barclay's testimony. Denial of defendant's request for a recess at the late date sought cannot be said to be an abuse of discretion. We acknowledge the persevering efforts of defendant's counsel to obtain a satisfactory report for his client. The defendant had examinations by two psychiatrists, an electroencephalograph examination by a physician and an examination by a psychologist, in addition to Dr. Barclay—all apparently barren of fruit for defendant's defense. The refusal of the trial court to grant one more thrust of the defensive foil was not unwarranted.

 Defendant directs his second point of appeal to his attempt to make the following comment during the voir dire examination of the jury panel:

"What I say right now is not in any way to be considered by you to be binding or what the law is. I anticipate that the Court will instruct not only must you find that the defendant shot and killed the person involved or was responsible for this, but in Murder First Degree that he considered it coolly and fully before doing so."

The State's objection to the statement, or line of inquiry, which purports to specify the particular elements of murder first degree was sustained. The basis for the objection and the ruling was that the defendant was improperly anticipating the court's instructions on the law. The court did advise defendant's counsel that it would be proper inquiry to ask if the jury would follow the court's instructions and require the State to prove every element of the crime of first degree murder. And defendant's counsel did proceed to make such inquiry without naming the specific elements. We find no error in the trial court's ruling. Although counsel are allowed reasonable latitude in examining prospective jurors, *Barnes v. Marshall*, 467 S.W.2d 70 (Mo. 1971); *Hill v. Boling*, 523 S.W.2d 867 (Mo. App.1975), there are certain interdictions on the scope of permissible examination. Counsel may not tell the veniremen what the court's instructions will be, *State v. Bolle*, 201 S.W.2d 158 (Mo.1947); *State v. Richardson*, 349 Mo. 1103, 163 S.W.2d 956 (1942); *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34 (Mo.App.1967), nor may counsel inform the jury as to the law applicable to the case, *State v. Smith*, 422 S.W.2d 50 (Mo. banc 1967), cert. denied, 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed.2d 176 (1968). It appears on the face of the inquiry that defendant's counsel was anticipating an instruction and was also informing the jury as to the law. Further, the trial court has broad discretion in controlling the conduct of the voir dire examination, and we will interfere with the trial court's ruling only in the event of a clear abuse of that discretion. *State v. Pickens*, 527 S.W.2d 29 (Mo.App.1975). No abuse of discretion is apparent here.

■ Defendant's final point on appeal concerns a remark during the prosecution's closing argument—specifically: "I submit to you that what Mr. Knapp truly deserves is the same thing he did to Bill Pappas." Objection was made and overruled. The defendant claims that the argument was improper as the prosecutor was arguing

punishment when the jury had no choice as to punishment. Additionally, the defendant claims the statement was highly inflammatory and appealed to passion and prejudice.

We recognize that in prosecuting a criminal trial, the prosecutor has the duty to vouchsafe the defendant a fair and impartial trial, one based upon facts and not passion, *State v. Perryman*, 520 S.W.2d 126 (Mo.App.1975). However, in our review of an allegedly improper argument we are reminded that "[t]here exist many unpredictables in the trial of a lawsuit, but perhaps the most unpredictable is the flight to which words may soar in the heat and fatigue of the closing argument. It is thus recognized by our courts that as to the impropriety of argument and its effect, each case must be considered in light of the facts of that particular case." *State v. Wintjen*, 500 S.W.2d 39, 42 (Mo.App.1973). The brunt of the defendant's final argument was aimed at a plea to the jury for sympathy in arriving at punishment. In response, the prosecutor in his closing argument attempted to demonstrate that the State legislature, in assigning life imprisonment to murder in the first degree, was tempering justice with mercy:

"When you talk about tempering, sympathy, or mercy, I suppose you should temper justice with mercy. At least, that is what we are taught. But I have to think that the Legislature takes that into consideration when they pass laws and that is why for certain crimes they give you certain punishment and for other crimes they give you perhaps not one but a range: for murder in the first degree there is presently only one punishment. *I submit to you that what Mr. Knapp truly deserves is the same thing he did to Bill Pappas.*" (emphasis added)

After defendant's objection to the last sentence was overruled, the prosecutor clarified his point: "Life imprisonment is tempering justice with mercy. To sentence him to life imprisonment is merciful considering what he did to Bill Pappas." It would

appear that the challenged statement, although possibly inelegantly phrased, was an attempt on the part of the State to counteract the effects of the defendant's final argument. Since a prosecutor "can go further by way of retaliation, in answering arguments of the defendant's counsel, than he would be authorized to do in the first instance," *State v. Tiedt*, 360 Mo. 594, 229 S.W.2d 582, 588 (banc 1950); *State v. Knighton*, 518 S.W.2d 674, 681 (Mo.App. 1975), it would appear that his argument was not improper. Also the "trial court has considerable discretion in permitting the use of retaliatory arguments." *State v. Knighton,* supra at 681; See *State v. Kirksey*, 528 S.W.2d 536 (Mo.App.1975). We find that the trial court did not abuse its discretion in overruling the defendant's objection to the challenged statement.

Even if we were to find the statement improper, we feel this would not be sufficient to constitute grounds for reversing the defendant's conviction. This is the only statement by the prosecutor which was questioned on appeal. Every instance of a prosecutor exceeding the limits of proper argument is not automatic grounds for the granting of a mistrial or a reversal on appeal. *State v. Raspberry*, 452 S.W.2d 169 (Mo.1970). Recognizing that the trial court possesses wide discretion in the control of oral arguments, we find no abuse of that discretion in the trial court's action with regard to the prosecutor's argument, *State v. Kirksey*, supra; *State v. Haynes*, 528 S.W.2d 11 (Mo.App.1975); *State v. Berry*, 526 S.W.2d 92 (Mo.App.1975).

The judgment is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.